**Richard C. PRICE, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 20653.**

United States Court of Appeals Ninth Circuit.

Feb. 20, 1967.

444

John R. Carroll, Santa Clara, Cal., for appellant. .

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Norton J. Come, Asst. Gen. Counsel, Warren M. Davison,

Richard S. Rodin, Attys., N. L. R. B., Washington, D. C., Roy O. Hoffman, Regional Atty., N. L. R. B., San Francisco, Cal., for appellee.

Bernard Kleiman, Chicago, Ill., Elliot Bredhoff, Michael H. Gottesman, Washington, D. C., for intervenor, United Steelworkers of America, AFL-CIO, Local Union No. 4028.

Kenneth C. McGuiness, Stanley R. Strauss, Vedder, Price, Kaufman, Kammholz & McGuiness, Washington, D. C., for amicus curiae, Labor Policy Ass'n.

Before BARNES and DUNIWAY, Circuit Judges, and .MATHES, District Judge.

DUNIWAY, Circuit Judge.

Price seeks review of a decision of the National Labor Relations Board, which dismissed a complaint based upon his charge that United Steel Workers of America, Local 4028, AFL-CIO, had been guilty of unfair labor practices. The particular portion of the statute upon which he relies is section 8(b) (1) (A) of the National Labor Relations Act as amended (29 U.S.C. § 158(b) (1) (A)).[1]

The facts were stipulated. Price worked for Pittsburgh-Des Moines Steel Company at its Santa Clara, California plant, starting in 1951. As far as the record shows he still works there. The union and the employer had entered into a series of collective bargaining agreements, and at the time Price filed his charge with the Board such an agreement was in effect covering the period September 1, 1962, to September 1, 1964.[2]

1. "(b) It shall be an unfair labor practice for a labor organization or its agents—
(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; * * *."
Section 7 provides:
"Sec. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other con-

certed activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a) (3)."

2. The agreement contained the following union security provision:
"All eligible employees who after September 1, 1962, become members of the Union and all employees hired after

Price had been a dues paying member of the union ever since 1951.

On April 15, 1964, Price filed a petition with the Regional Director of the Board to rescind the authority of the union to enter into a union security arrangement covering the employees at the Santa Clara plant.[3] He made a mistake, for his actual intent was to file a petition for decertification of the union as the bargaining representative of the employees. He corrected his petition by filing a withdrawal on April 22, 1964. This was approved by the Board's representative on April 24, 1964. On June 3, 1964, Price filed a petition to decertify.[4] The Teamsters Union filed a separate petition on June 12. On August 6, 1964, the union, the Teamsters, the employer and Price entered into an agreement for a consent election. The election was held on August 14, 1964, and the Steelworkers won. The results of the election were certified by the Regional Director on August 24, 1964. A new agreement was entered into between the employer and the union covering the period September 1, 1964 to September 1, 1967.[5]

On May 13, 1964—after Price's first petition and before his corrected petition —three members of the union, all employees of the employer, filed charges with the union alleging that Price's first petition violated the union's constitution. The relevant sections are Article XII, section 1(d): "Any member may be penalized for committing any one or more of the following offenses: * * * (d) advocating or attempting to bring about the withdrawal from the International Union of any Local Union or any member or group of members; * * *" and Article XII, Section 2: "Any member convicted of any one or more of the above offenses may be fined, suspended, or expelled."

Price was tried by the union's trial committee on June 1, 1964, two days before he filed his petition to decertify and after he had withdrawn his first petition. He was found guilty, and the trial committee recommended that he be (1) suspended from membership and precluded from attending meetings for 5 years; (2) fined $500 plus costs of the hearing; and (3) suspended from membership completely pending payment of the fine. On June 3, 1964, the membership adopted these recommendations. Price appealed to the Steelworkers International Executive Board. The Board withdrew the fine on November 23, 1964.[6] Price could have taken a further appeal to the International Convention, but did not.

---

that date, upon completion of their probationary period (thirty (30) days), as a condition of continued employment shall pay initiation fees and Union dues until September 1, 1964, * * *."
It is stipulated that Price was subject to this provision. Except for the fact that this provision was attacked in the first petition that Price filed with the Board, we cannot see its materiality. It is also stipulated that Price was a dues paying member of the union from 1951 on. Whether he joined the union because of a comparable provision in an earlier contract does not appear. We assume that he joined because he wanted to. The only clause before us does not require that he join—it does not even, on its face, require that he pay dues. He neither joined the union nor was hired after September 1, 1962.

3. Section 9(e) (1) of the Act; Rules and Regulations of the National Labor Relations Board, Series 8, as amended—part 102, subpart E, §§ 102.83–102.88.

4. Section 9(c) of the Act; Rules and Regulations, supra, Subpart C, § 102.60 et seq.

5. This contract had the same union security provision as the 1962 contract, and Price was bound by it in the same way—whatever that be taken to mean. Perhaps, because he has been suspended from membership, it can be said to require that he pay dues. See, however, note 2, supra. The record is silent as to this. At oral argument, the union and the Board seemed to be in agreement that Price was not paying, and was not expected to pay, dues while suspended.

6. Nothing explicit was said about withdrawing the costs of hearing penalty. Apparently the costs were considered part of the fine and withdrawn. The union has indicated on this appeal that nothing has been or will be done to collect the costs.

Price filed his unfair labor practice charge with the Board on June 11, 1964, alleging that the union's discipline had coerced and restrained his exercise of section 7 rights in violation of section 8(b) (1) (A). A complaint issued on November 5, 1964. In its answer and amended answer, the union admitted the disciplinary action taken and alleged that the International had withdrawn the fine. The Board found that the union had not violated the Act, and ordered the complaint dismissed.

■ The Board held that because the fine had been withdrawn at a time when Price was not obligated to pay it, the mere levy of the fine was not an operative factor in this case. We agree. The fine would not have become relevant until the end of the period of suspension. It was in effect a fee for readmission, not a straight fine enforceable in court. Thus this case is unlike Allis-Chalmers Mfg. Co. v. NLRB, 7 Cir., 1966, 358 F.2d 656, cert. granted Oct. 10, 1966, 385 U.S. 810, 87 S.Ct. 54, 17 L.Ed.2d 51, and Associated Home Builders of the Greater East Bay, Inc. v. NLRB, 9 Cir., 1965, 352 F.2d 745. In *Allis-Chalmers* the fines were enforceable in court and in *Associated Home Builders* the fines were subtracted from dues. We need not and do not decide under what circumstances the proviso to section 8(b) (1) (A) may permit a union to fine its members.

■ The question that remains is whether the union's action in suspending Price from membership for five years because he attempted to have the union decertified is an unfair labor practice under section 8(b) (1) (A). The Board held that it is not, and we agree. We think that the proviso to paragraph (A) requires this result. The Act uses the words "restrain or coerce." We have no doubt that the suspension of Price may be considered a form of restraint or coercion. But the proviso is a part of the sentence in which those words appear, and therefore, even if the union's action be restraint or coercion, it is not unlawful if it falls within the proviso.

■ Here, the union's action was taken under provisions of its constitution that expressly deal with retention of membership in the union. And the union's action affected only Price's membership. It did not affect his job, or, so far as appears, any other economic rights. The union's action falls within the literal language of the proviso. It also, we think, falls within the purpose of the proviso. The legislative history of the proviso shows that it was designed to make it clear that in passing section 8(b) (1) (A) Congress was not trying to interfere with the internal affairs of unions, but was trying to outlaw coercive and restraining acts of unions attempting to organize unorganized employees. (See Legislative History of the Labor Management Relations Act of 1947 (G.P.O. 1948) at pp. 1139, 1141, 1200; 93 Cong.Rec. 4398, 4400, 4433.)

The Board has been discriminating in its application of the proviso. In a series of cases in which unions attempted to discipline their members for filing unfair labor practice charges against them, the Board has refused to apply the proviso. Local 138, Operating Engineers and Charles S. Skura, 148 NLRB 679 (1964); H. B. Roberts and Local 925, Operating Engineers [Wellman-Lord Engineering, Inc.] and Wallace J. Martin, 148 NLRB 674 (1964) enforcement granted sub nom. Roberts v. NLRB, 121 U.S.App.D.C. 297, 1965, 350 F.2d 427; Wood, Wire and Metal Lathers Union and Phillip A. Contreras, Jr., 156 NLRB No. 93 (Jan. 18, 1966); Houston Typographical Union No. 87 and Don P. Bosworth, 158 NLRB No. 104 (May 20, 1966); Cannery Workers Union of the Pacific (Van Camp Sea Food Co., Inc.), 159 NLRB No. 47 (June 21, 1966). See also Ryan v. I. B. E. W., 7 Cir., 1966, 361 F.2d 942. In each of these cases, the union member was not attacking the union's existence or its position as bargaining agent vis-á-vis a particular employer. Rather, the union member was asserting individual rights granted to him by law as against the union, whose existence was not threatened. In each case, the union was

charged with a violation of law. In each case, the Board or the Court held that the union could not discipline the member for taking his case to a tribunal set up by law to vindicate his rights.

Price relies heavily on these cases. The Board distinguishes them, and we think properly. Price did not accuse the union of violating any provision of law. He sought to attack the union's position as bargaining agent, which is, as the Board says, in a very real sense an attack on the very existence of the union. We think that, at the least, the proviso was intended to permit the union to suspend or expel a member who takes such a position. Otherwise, during the pre-election campaign, the member could campaign against the union while remaining a member and therefore privy to the union's strategy and tactics. We can see no policy reason for requiring the union to retain a member who takes such a position. See Tawas Tube Products, Inc. and Harold Lohr and United Steelworkers, 151 NLRB 46 (1965).

We express no opinion as to whether, if the discipline had been more severe, the result should be different.

Petition denied.