**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL MOLDERS AND ALLIED WORKERS UNION, LOCAL NO. 125, AFL–CIO, Respondent.**

No. 18439.

United States Court of Appeals, Seventh Circuit.

April 23, 1971.

---

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, Deputy Asst. Gen. Counsel, Judith P. Wilkenfeld, Atty., N. L. R. B., Washington, D. C., for petitioner.

Robert E. Gratz, Milwaukee, Wis., Gratz & Shneidman, Milwaukee, Wis., for respondent.

Before KILEY, KERNER and STEVENS, Circuit Judges.

KERNER, Circuit Judge.

The National Labor Relations Board seeks enforcement of its cease and desist order and finding that the respondent, International Molders and Allied Workers Union, Local 125, AFL–CIO (Union), had violated § 8(b) (1) (A) of the National Labor Relations Act, 29 U.S.C. § 158(b) (1) (A). The Board decided that it was an unfair labor practice for the Union to assess a $100 fine against one of its members, Dorothy Strzyzewski, who had circulated a petition for decertification of the Union as the exclusive bargaining representative of the employees at the Blackhawk Tanning Company. The Union determined that her decertification activities were an attempt "to undermine or injure the interests" of the Union, a violation under its constitution. Miss Strzyzewski was notified of the charge and chose not to appear at the hearings, commenting that "if you feel you want to suspend me from your union—be my guest." She has not paid the fine, and the Union has taken no action to enforce collection.

Section 8(b) (1) (A) makes it an unfair labor practice for a union "to restrain or coerce employees in the exercise of the rights" guaranteed to them

by § 7 of the Act, which includes the right not to organize or be represented by a union. However, § 8(b) (1) (A) also contains a proviso which gives a union the right to prescribe rules governing the acquisition and retention of membership even though the enforcement of these rules may coerce employees in the exercise of their § 7 rights. Thus, § 8(b) (1) (A) and its proviso envision a balancing of the rights of the union against the rights of employees and members on a case by case basis. Some union practices which are inherently coercive under § 8(b) (1) (A) such as fining or expulsion, are permissible under the proviso if they are within the legitimate interests of the union and do not contravene any other public policy enunciated in the Act. Scofield v. N.L.R.B., 394 U.S. 423, 89 S. Ct. 1154, 22 L.Ed.2d 385 (1969); N.L.R.B. v. Allis-Chalmers Mfg. Co., 388 U. S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967).

The issue this appeal presents is whether the proviso to § 8(b) (1) (A) allows a union to fine a member for attempting to secure its decertification under the procedures of § 9 of the National Labor Relations Act, 29 U.S.C. § 159.[1]

Both the imposition of fines and expulsion by a union have been recognized as inherently coercive within the meaning of § 8(b) (1) (A). Although the proviso to § 8(b) (1) (A) protects some union actions which coerce its members, it has been held that a union may not discipline a member, by fine or expulsion, for bringing a complaint against it under § 8 of the Act. Cannery Workers Union (Van Camp Sea Food), 159 N.L.R.B. 843 (1966); Local 138, International Union of Operating Engineers, AFL–CIO and Charles S. Skura, 148 N.L.R.B. 679 (1964). A member who believes that the union has

committed an unfair labor practice under § 8 should not be punished for seeking the aid of the Board. The Board in *Skura*, after weighing the right of a union to govern its internal affairs against the rights of employees under § 7, concluded that:

"  *   *   *   no private organization should be permitted to prevent or regulate access to the Board, and a rule *   *   *   by means of which a union seeks to prevent or limit access to the Board's processes is beyond the lawful competency of a labor organization to enforce by coercive means." 148 N.L.R.B. at 682.

See N.L.R.B. v. Industrial Union of Marine and Shipbuilding Workers of America, AFL–CIO, et al., 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968).

On the other hand, it has been held that a union may expel a member for bringing a petition for its decertification before the Board under § 9 of the Act. Price v. N.L.R.B., 373 F.2d 443 (9th Cir. 1967), cert. denied 392 U.S. 904, 88 S.Ct. 2051, 20 L.Ed.2d 1363 (1968); Tawas Tube Products, Inc., 151 N.L.R.B. 46 (1965). These cases explain that the filing of a petition for decertification, unlike the filing of an unfair labor practice charge under § 8, attacks the very existence of the union as the exclusive bargaining agent. In light of this threat, the proviso to § 8(b) (1) (A) justifies a defensive reaction by the union such as expulsion of a member who has filed a petition for decertification with the Board. Otherwise, these cases explain, a retained member would be privy to the union's tactics and other information during the pre-election campaign. Expulsion eliminates the presence of an antagonistic member whose disloyalty would pose such problems to the union.

The use of a fine, however, does not serve these defensive purposes. Once a

---

1. Section 102.60(a) of the Board's Rules and Regulations (Series 8), 29 C.F.R. § 102.60, provides that a petition for decertification under § 9 "may be filed by an employee or group of employees or any individual or labor organization acting in their behalf or by an employer." After filing the Board may order an election, and the union may lose its power as the exclusive bargaining agent.

member pays the fine, he retains his membership and is able to attend meetings and learn of union strategy during the decertification, pre-election and election periods. The assessment of a fine is not calculated to protect the threatened union. Its only effect is to punish a member who wishes to oust the union as the exclusive bargaining representative. This cannot be justified under the proviso to § 8(b) (1) (A) in the face of the strong policy which allows union members unimpeded access to the Board. In contrast to the defensive nature of expulsion, the imposition of a fine on a member who has utilized the § 9 decertification procedures would be as unfair as its imposition for those who proceeded before the Board under § 8.

Punishment by a union of its members who have circulated a decertification petition would discourage them from utilizing the Board to settle disputes relating to their working conditions. See N.L.R.B. v. Industrial Union of Marine and Shipbuilding Workers of America, AFL–CIO, et al., at 424, 425, 88 S.Ct. 1717. For the Board to order a new election under § 9, it must be presented with a petition signed by "a substantial number" of the employees. Such was attempted in this case under the leadership of Miss Strzyzewski. This procedure requires that the employees who are dissatisfied with the union take independent action and carry on a campaign for signatures. Since the initiative of employees and union members is needed for § 9 to operate effectively, the circulation of the petition should be conducted in an atmosphere free from union threats and coercion.

For these reasons, we hold that the fine in this case constituted an unfair labor practice under § 8(b) (1) (A).

The Union additionally argues that it was denied due process by the Board because it believes that the issue we have just resolved—the propriety of the fine under § 8(b) (1) (A)—was not framed in the complaint nor fully litigated. It claims that the only issue of which it had notice was whether Miss Strzyzewski was a full-fledged member of the Union and thus liable to pay the fine. A reading of the complaint and transcript of the hearing convinces us that the Union was fully apprised of all the issues disposed of in this case. The complaint, in clear language, charges that the fine was an unfair labor practice under § 8(b) (1) (A). Granted, Miss Strzyzewski's membership status was an issue before the Board and, logically, was decided before the substantive question of the Union's liability under § 8(b) (1) (A) could be reached. But, its relevance was as a threshold issue to the determination of the legality of the fine. We cannot believe that the Union did not have notice of the § 8(b) (1) (A) issue, which formed the gravamen of the complaint.

Accordingly, we enforce the order of the Board.

Order enforced.