Jones, J.
We are asked to uphold the imposition of fines by a union against three of its members for activity described as dual unionism.
The three respondent union members were aircraft mechanics. Two were employed by National Airlines and the third was employed by Eastern Airlines. Each was required to maintain membership in the union, Lodge 1894, International Association of Machinists and Aerospace Workers, AFL-CIO (IAM), pursuant to the union shop provision in the contracts with the airlines, the inclusion of which provision is expressly authorized by the Railway Labor Act (U. S. Code, tit. 45, § 152, subd. Eleventh).
After periods of employment and membership in Lodge 1894 varying from 4 to 14 years, each of the three respondents became an adherent of a rival union, Aircraft Mechanics Fraternal Association (AMFA). In July, 1967 the three mechanics *18 actively supported ^.MFA in an election in which AMFA sought to displace IAM as the bargaining representative of the aircraft mechanics employed by National Airlines. Lodge 1894 won the election, whereupon some of its members filed charges against the three respondents based on alleged violation of section 3 of article L. of the IAM constitution which provides in pertinent part:
“ The following actions or omissions shall constitute misconduct by a member which shall warrant a reprimand, fine, suspension and/or expulsion from membership * * *
“ Attempting, inaugurating, or encouraging secession from the I.A.M., or advocating or encouraging or attempting to inaugurate any dual labor movement ”.
No contention is made that the respondents did not violate the proscriptions of this constitutional provision.
Written notice of the specific charges was given each respondent and hearings were duly held before trial committees of Lodge 1894. The trial committees recommended that each of respondents be found guilty of violating the constitutional proscription of section 3, and recommended fines as follows: McKiernan, $1,000; Carroll, $3,000; Colon, $3,000. At a membership meeting a majority of the members found each respondent guilty. While the recommendation as to the fine against. Colon was accepted, the recommendations as to the fines against McKiernan and Carroll were rejected. On appeal, however, the International President reversed and accepted the recommendations as to the McKiernan and Carroll fines.
When the fines were not paid, appellant-plaintiff, as President of Lodge 1894, instituted the present proceeding for their collection. The New York City Civil Court for Queens County granted partial summary judgment for appellant as to the issue of liability, ordered that the issue of the reasonableness of the fines be left to the trial court as an issue of fact, and denied respondents-def endants ’ cross motions for summary judgment. On appeal the Appellate Term for the Second and Eleventh Judicial Districts, reversed and granted summary judgment for respondents-def endants. On further appeal the Appellate Division, Second Department, affirmed, but granted leave to appeal to our court. We affirm the order of the Appellate Divi *19 sion, thus holding that this union not impose fines on its members for dual unionism in the circumstances of this case.
The courts of our State generally have supported the enforcement of union discipline other than when to do so would operate to suppress criticism or political activity within the union. (See The Law of Union Discipline: "What the Courts Do In Fact, 70 Yale L. J. 175; Madden v. Atkins, 4 N Y 2d 283 [holding expulsion of union members for internal political opposition illegal].) The issue now before us, of course, is whether on a proper balancing of the competing interests of the union and the interests of its individual members, a union proscription against dual unionism may be enforced by the imposition of fines against the offending members.
The Railway Labor Act lists as among its purposes: “to forbid any limitation upon freedom of association among employees,” and “ to provide for the complete independence * * * of employees in the matter of self-organization to carry out the purposes of this chapter ”. (U. S. Code, tit. 45, § 151a.) It does not, however, contain any express parallel to section 8 (subd. [b], par. [1], cl. [A]) of the National Relations Act which makes it an unfair labor practice for a union to “ restrain or coerce employees in the exercise of the rights guaranteed in section 7 ” — the rights to self-organization and to engage in concerted activities for the purpose of colective bargaining. (U. S. Code, tit. 29, § 158, subd. [b], par. [1], cl. [A].)
The Labor Management Reporting and Disclosure Act, applicable here, provides: “ Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions * * * Provided, that nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution ”. (U. S. Code, tit. 29, § 411, subd. [a], par. [2].)
We conclude that a rule which if enforced would preclude or deter the right of employees (who are members but not officers of the union) to seek by otherwise legitimate means to replace an incumbent bargaining agent with another collective representative is not reasonably required for the protection of the legitimate interests of the incumbent union, and is accordingly *20 violative of this provision of the act. To say that the responsibility of each union member is always and in all circumstances to support the current bargaining agent would be effectively to deny to the members the right of freedom of choice as to their bargaining representative. To sanction such a rule would be to impose a limitation upon the freedom of association among employees, in violation of the Railway Labor Act.
This is not an instance in which the activity of the union members is designed and calculated to advance the interests of the employer as against those of the union. In that situation the activity of the members can indeed be characterized as primarily destructive of the union. In such situations courts have upheld the right of the union to discipline the offending member (Price v. NLRB, 373 F. 2d 443; Tawas Tube Prods., 151 NLRB 46), although in the same situation the imposition of fines has been held impermissible (NLRB v. International Molders & Allied Workers Union, 442 F. 2d 92). Nor is it 'an instance in which the union may legitimately fine its members for failure to support a duly adopted position of the union vis-a-vis the employer (Scofield v. NLRB, 394 U. S. 423 [violation of a production ceiling established by the union]; NLRB v. Allis-Chalmers Mfg. Co., 388 U. S. 175 [crossing picket lines established by the union in support of a lawful strike]; cf. Florida Power & Light v. Electrical Workers, 417 U. S. 790).
The present situation conceptually is more to be likened to the recognized right of union members to bring unfair labor practice charges against the union (cf. NLRB v. Marine Workers, 391 U. S. 418; Charles S. Skura, 148 NLRB 679). In that instance, as here, the contested issue is between the rights of the individual members and the interests of the union. The rights and interests of the union as against third parties are only tangentially involved. This being so we hold that by constitutional provision the union may not in the guise of an asserted contractual restriction foreclose the individual members from the exercise of their legitimate right to freedom of choice of their, bargaining agent. If the relationship between the union and its members be recognized as including in addition to contractual rights, substantial fiduciary obligations on the part of the union to its members (Bradley v. O’Hare, 11 *21 A D 2d 15), the fiduciary may not advance its self-interest at the expense of the rights of the union members to whom its fiduciary responsibility runs.
In a case squarely in point, the United States Court of Appeals for the Fifth Circuit held that the imposition of a fine on a union member for joining and supporting another union was an invalid infringement on the rights of the union member under the provision of the Labor Management Reporting and Disclosure Act quoted above (U. S. Code, tit. 29, § 411, subd. [a], par. [2]; Airline Maintenance Lodge 702 v. Loudermilk, 444 F. 2d 719). In that case an Eastern Airlines’ pilot, a member of Lodge 702, IAM, pursuant to a union shop agreement, nonetheless became president of and worked for AMFA in an unsuccessful attempt to bring about the replacement of IAM as bargaining agent at National Airlines. Notwithstanding that the union member’s conduct concededly violated the provisions of the IAM constitution, the court refused to enforce collection of the fine imposed by the union on the dissident pilot. We see no significant difference between the holding in Loudermilk and the determination at the Appellate Division in the present case. The holding in Tri-Rivers Mar. Engrs. Union (U. S. Steel) (189 NLRB 838) is to the same effect.[1] (Cf. Lodge 113, IAM [American Hosp. Supply Corp.], 207 NLRB, No. 127; District Lodge No. 837, IAM [McDonnell Douglas Corp.], 206 NLRB, No. 79.)
On principle we conclude that support of a rival union is a legitimate expression of member dissatisfaction with an incumbent collective representative, and involves the exercise of a right of the individual member which cannot be denied by the union irrespective of an explicit provision of the union constitution to the contrary.[2] On this view of the case we do not *22 reach the other issue tendered by the parties.
The order of the Appellate Division should be affirmed.
Chief Judge Bbeitel and Judges Jasen, G-abrielli, Wachtleb, Babin and Stevens concur.
Order affirmed, with costs.

. We are not unmindful of the decision in Sawyers v. Grand Lodge, I.A.M. (279 F. Supp. 747) in which the right of a union to expel an officer for dual unionism activities was upheld.

. We note, but hold to be without significance in the context of today’s áirport-wide bargaining where as here the election, while at a different airline, was at the same airport (LaGuardia), that the pilot in Loudermilk and one of the mechanics in the case now before us were engaged in activity in support of the rival union at an airline (National in both instances) other than that at which he was employed (Eastern, again in both instances), Nor does appel *22 lant make any point of this distinction. We also observe, but the record fails to disclose the significance if any of the fact, that the union membership voted not to accept the recommendations as to the imposition of fines on the two National Airlines mechanics but to accept the recommendation as to the fine against the Eastern mechanic.
Further we observe that while two of the mechanics here had at one time been officers of Lodge 1894, their service in such capacity had terminated well before the dual union activities here complained of. Accordingly we do not reach and imply no view, as to the right, if any, of the union to enforce discipline against its officer members for joining and promoting a rival labor organization.