**314**

Carl Max STEWART, Plaintiff,

v.

ST. LOUIS TYPOGRAPHICAL UNION
NO. 8, an unincorporated
association, Defendant.

No. 77–51C(1).

United States District Court,
E. D. Missouri, E. D.

May 19, 1978.

Donald H. Clooney, Douglas B. Brock-house, Thomas, Busse, Goodwin, Cullen & Clooney, St. Louis, Mo., for plaintiff.

John H. Goffstein, Cary Hammond, Bartley, Goffstein, Bollato & Lange, Clayton, Mo., for defendant.

MEMORANDUM

MEREDITH, Chief Judge.

This matter is before the Court on the motion of defendant for summary judg-

ment, and on the motion of plaintiff for summary judgment as to liability. For the reasons stated below, defendant's motion will be sustained and plaintiff's motion overruled. Judgment will be entered for defendant.

In 1974 plaintiff, Carl Max Stewart, was employed by the St. Louis Post-Dispatch as a copycutter. On December 15, 1974, an altercation arose between plaintiff and another employee, Sharin Andersen. Plaintiff apparently ordered Andersen to do work she felt plaintiff was unauthorized to order.

Andersen subsequently filed intra-union charges with defendant St. Louis Typographical Union No. 8, charging that plaintiff had: "(1) [assumed] the duties of the Foreman as outlined in Article IV, Section 1, of the Contract; and (2) with conduct unbecoming of a union member . . ."

Plaintiff was given notice of the charges by certified mail on January 7, 1975. This notice complied with Article V, section 5, of the International Typographical Union Bylaws in effect at that time. Plaintiff then sent a letter, dated January 13, 1975, acknowledging receipt of the charges and further asserting the defense that he was acting as a foreman, and as such, was immune from discipline by the Union when his action "is in accordance with the provisions of this contract."

The charges were then presented to the local membership at the regular meeting on February 2, 1975. At that meeting, the membership voted on the following question, as provided for in section 7 of the Bylaws: "Shall the charges as presented be deemed cognizable?" The membership voted "yes" as to that issue.

Pursuant to section 8 of Article V of the Bylaws, the president of the Union then appointed an investigating committee to investigate the charges.

On February 5, 1975, the plaintiff was mailed a notice that an investigating committee had been appointed and that it would meet on February 19, 1975, to hear evidence. The plaintiff's presence was requested. This procedure complied fully with Article V, section 8, of the Bylaws.

On February 19, 1975, the investigating committee evaluated the charges and made a determination that the charges were worthy of trial. Plaintiff chose not to attend this meeting.

At the next regular meeting on March 2, 1975, the membership was presented with the findings of the investigating committee. The membership voted to decide "whether or not the charges shall be considered worthy of trial." This procedure fully complied with Article V, section 9. In accordance with that section, the president then appointed a five-member committee to try the case.

Plaintiff was notified by the Union that the trial would be held on March 13, 1975. The committee held the hearing at that date. Neither plaintiff nor Andersen attended the trial, although the trial committee phoned each party. Plaintiff stated he would stand on his letter of January 13, 1975, and had nothing further to say. Moreover, plaintiff did not object to any of the procedures taken up to that point.

The trial committee found plaintiff guilty of both charges and recommended a fine. This judgment was reported to the membership at the regular meeting on April 6, 1975. Section 12 of Article V requires the finding to "be approved by secret ballot". This was done at that meeting.

Plaintiff timely filed his appeal on April 10, 1975, under section 27 of Article V with the Executive Council, and filed a brief in support of his contentions.

The executive Council issued its order on July 9, 1975. It found that the merit of the charges was a matter of contract (collective bargaining agreement) interpretation and that, therefore, the Union should have utilized grievance procedures to determine "whether or not appellant [plaintiff] was in fact a supervisor" before it proceeded to a union charge and trial. Accordingly, the fines were ordered remitted to plaintiff and the charges dropped. Both sides had a right to appeal the intermediate decision to "the next succeeding convention of the In-

ternational Typographical Union." See § 36 of the Bylaws. Apparently, neither plaintiff nor the Union availed themselves of that alternative. It should be further noted that the Executive Council expressed no view as to the validity of substantive charges filed by Andersen.

Plaintiff then filed this suit in the state court for defamation and improper disciplinary action by a labor organization under 29 U.S.C. § 411. Defendant Union removed to this Court on the basis of that federal question.

Defendant contends in its motion for summary judgment that this Court is without jurisdiction to entertain plaintiff's case because, as a matter of law, plaintiff can prove no violation of 29 U.S.C. § 411(a)(5). Defendant alleges that it did not take "improper disciplinary action" with respect to plaintiff, because plaintiff received all of the procedural safeguards required by the statute and implied by the due process clause. The Court agrees.

The affidavits of various local officers and exhibits attached to defendant's motion conclusively established that the defendant followed its Bylaws to the letter and that such Bylaws satisfy the statute and due process.

It is clear that plaintiff received adequate notice of the trial. In addition, he was given adequate time within which to prepare his defense. Finally, he was afforded a full and fair hearing. 29 U.S.C. § 411(a)(5).

There is little question that plaintiff received notice within an adequate time. In his letter of January 13, 1975, he acknowledged receipt of the charges and further stated his affirmative defense. He was given an opportunity to be heard and defend himself at the trial in March, but chose not to appear. Even if due process commanded his presence, arguendo, his knowledge of the date and place of the hearing well in advance illustrate he waived his right to appear to defend himself.

■ What constitutes a "full and fair" hearing requires the application of the tra-

ditional concepts of due process. *Kuebler v. Cleveland Lithographers & Photo. U. Loc. 24–P*, 473 F.2d 359, 364–365 (6th Cir. 1973). *Falcone v. Dantinne*, 420 F.2d 1157 (3rd Cir. 1969). A fair hearing encompasses full notice and a reasonable opportunity to be heard; including the right to present evidence and the right to confront and cross-examine witnesses. *Grannis v. Ordean*, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1914). The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard. *Goldberg v. Kelly*, 397 U.S. 254, 268–269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

■ By becoming a member of defendant Union, plaintiff necessarily made himself a party to the obligations and duties of the Union's bylaws and thereby established a contractual relationship with the Union. *Neal v. System Board of Adjustment (Missouri Pacific R.)*, 348 F.2d 722, 726 (8th Cir. 1965). Regardless of the merit of Andersen's charges, the issue is whether the process which the labor organization afforded plaintiff was fair. It is clear that plaintiff was given a chance to be present and to be heard throughout the entire proceeding, yet chose to remain absent. It is further evident that there was some evidence to support the decision. *Boilermakers v. Hardeman*, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971).

Although the charges were reversed on appeal to the Executive Council, the Court "must preserve a careful balance between the protection of the rights of the individual members on the one hand, and the maintenance of strong and effective leadership and the avoidance of undue interference in internal union affairs on the other." *Falcone*, supra, at page 1164.

Because the plaintiff was afforded sufficient procedural safeguards, there remains no genuine issue of fact as to his claim of improper disciplinary action under 29 U.S.C. § 411. Summary judgment is a proper remedy where there is no issue of material fact. Rule 56, F.R.C.P., 29 U.S.C. Accordingly, the Court will order that judgment be entered for defendant and dismiss plaintiff's

complaint. The plaintiff's motion for summary judgment as to liability will be denied.