Kathy ANDRASZEK, et al., Plaintiffs,

v.

**ROCHESTER TELEPHONE WORKERS, Defendant.**

No. 01–CV–6214L.

United States District Court, W.D. New York.

Feb. 4, 2003.

Daniel E. Clifton, Lewis, Greenwald, Clifton & Nikolaidis, P.C., New York City, for Plaintiffs.

Michael T. Harren, Chamberlain, D'Amanda, Oppenheimer & Greenfield, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

### Introduction

This case is an example of the old adage, "you can't have it both ways." The case before the Court involves thirteen union members who were expelled from their union for certain activities relating to efforts to replace their existing union with a rival one. The expelled members claim that their acts were protected "free speech" activities under the Labor Management Reporting Disclosure Act, 29 U.S.C. § 401, *et seq.* ("LMRDA"). The union, on the other hand, contends that the activities were not protected and that the members were properly disciplined.

I agree with the union that the activities here went far beyond expressing opinions about union leadership, which is protected, and became activity in direct competition with the union, which is not. The union, therefore, properly expelled those members for acts designed to displace the union with another.

Currently pending before the Court is plaintiffs' motion to amend their complaint (Dkt.# 12) and the union's cross-motion for summary judgment (Dkt.# 16). As set forth below, plaintiffs' motion to amend is denied, and RTWA's motion for summary judgment is granted in part and denied in part.

### Facts

The basic facts of this case are undisputed. Plaintiffs were members of the defendant union, Rochester Telephone Workers Association ("RTWA"). At that time, RTWA represented approximately one-half of the work force at Frontier Telephone. The other one-half was represented by a rival union, Local 1170 of the Communication Workers of America, AFL–CIO ("CWA"). Historically, the RTWA has represented the clerical employees and the CWA has represented the outside or "line" employees.

In May and June of 2000, plaintiffs formed the 'CWA Organizing Committee,' met with RTWA members at CWA's local

office, met with CWA's District Organizing Coordinator, prepared and distributed leaflets and announcements urging RTWA members to join CWA, wore buttons and tee-shirts supporting CWA, and recruited other RTWA members to join in the organizing campaign. Plaintiffs admit that they undertook such measures in an effort to persuade RTWA members that CWA should be their representative instead of RTWA. Bockus Decl., Dkt. # 23 at ¶ 2. Plaintiffs' goal was to displace RTWA with CWA as their collective bargaining representative. Dkt. # 18 at ¶ 8. Because of these activities, on June 4, 2000, RTWA filed internal union charges against plaintiffs alleging violation of the following provision of RTWA's Constitution:

Article XI DISCIPLINE

Section 1. Offenses

Any member may be penalized as set forth in Section 3, hereof, for committing any one or more of the following offenses:

(a) Violation of any of the provisions of this Constitution, any collective bargaining agreement, or working rule of the Rochester Telephone Workers Association.

 * * * * * *

(c) Advocating or attempting to bring about the withdrawal from the Rochester Telephone Workers Association of any member or group of members.

(d) Working in the interest of or accepting membership in any organization opposed to the Rochester Telephone Workers Association.

Dkt. # 14, Ex. B. Each plaintiff was charged with engaging in some or all of the prohibited acts. Dkt. # 14, Ex. C.

RTWA sent each plaintiff a letter notifying her of the charges, the specific subdivision of the Constitution alleged to have been violated, and of the date of the hearing before RTWA's Committee of Representatives ("the Committee"). Dkt. # 16, Ex. B. Section 3 of the RTWA Constitution provides that "[a]ny member convicted of any one or more of the above offenses may be suspended and removed from office and membership after a hearing before the Committee of Representatives, by a majority vote . . . ." Dkt. # 16, Ex. D.

At the June 29, 2000 hearing, twelve of the thirteen plaintiffs appeared. All twelve admitted engaging in the acts charged and each pleaded "guilty," although all contended that such conduct was protected speech. The thirteenth plaintiff, Laurie Dominick, did not appear at the hearing. RTWA Hearing Officer Ellen Lynch announced at the hearing that a nonappearance automatically would result in a conviction. Hearing Trans., Dkt. # 16, Ex. C.

Because plaintiffs pleaded guilty, there was no hearing and the RTWA prosecutor presented no evidence to support the charges. Therefore, the Committee considered only what discipline to impose for the admitted violations. After deliberating that same evening, the Committee voted to expel plaintiffs from the Union. The vote as to each individual member ranged from twenty-two votes for removal and one vote for suspension in several cases, to as close as twelve votes for removal and eleven votes for suspension in the case of one member. *Id.* By letters dated July 6, 2000, plaintiffs were notified of their expulsion from the RTWA. Dkt. # 23, Ex. I.

### Discussion

#### 1. *Summary Judgment*

#### A. Freedom of Speech Claims

At issue is the difficult balance between the rights of union members to free speech and the right of a union to regulate its members conduct and prohibit "dual un-

ionism."[1] Congress enacted the LMRDA in 1959 to regulate the relationship between union members and their union and its leaders. Congress sought to promote full and active participation of union members in their union "through processes of democratic self-government." *Wirtz v. Hotel, Motel Employees*, 391 U.S. 492, 497, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968); *see also United Steelworkers of Am. v. Sadlowski*, 457 U.S. 102, 110–113, 102 S.Ct. 2339, 72 L.Ed.2d 707 (1982);. *Am. Fed'n of Musicians v. Wittstein*, 379 U.S. 171, 182–83, 85 S.Ct. 300, 13 L.Ed.2d 214 (1964). Title I of the LMRDA affords basic protections to all union members, including equal voting rights, the right to free speech, and the right of free assembly. Although the LMRDA granted these rights to union members, it also clarified the right of unions to adopt and enforce reasonable rules for its members.

Section 101(a)(2) of the LMRDA provides:

(2) Freedom of speech and assembly

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2). Section 609 of the LMRDA provides that a union may not expel or otherwise discipline a member for exercising any right guaranteed by the statute.[2] 29 U.S.C. § 529.

By enacting the LMRDA, Congress intended to assure "rank-and-file union members' democratic participation in *intra*-union affairs, such as voting in union elections, standing for union office, and approving (or challenging) official union policies and decisions." *Aircraft Mechanics Fraternal Ass'n v. Transp. Workers Union of Am., Local 514*, 98 F.3d 597, 600 (10th Cir.1996) (emphasis in original). The right to free speech was meant to protect members who spoke out against the union leadership from reprisal. *See Sadlowski*, 457 U.S. at 110–113, 102 S.Ct. 2339.

However, the rights guaranteed by Section 101(a)(2) are not meant to be coextensive with the Constitutional right to free speech guaranteed by the First Amendment. *Id.* at 111, 102 S.Ct. 2339 ("there is absolutely no indication that Congress intended the scope of § 101(a)(2) to be identical to the scope of the First Amend-

---

1. Dual unionism is defined as "a charge (usually a punishable offense) leveled at a union member or officer who seeks or accepts membership or position in a rival union, or otherwise attempts to undermine a union by helping its rival." Roberts, *Roberts' Dictionary of Industrial Relations*, 160–61 (3d ed.1986). Another source defines the concept as "secret or open efforts of union members to undermine the union and substitute another union as representative of employees ...." Labor Relations Reporter (BNA), LRX 226–27 (1987).

2. Section 609 provides: "It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter."

ment."). This fact is evidenced by the proviso that the union has the right to establish "reasonable rules" governing the responsibilities of its members towards the union as an institution and to prohibit certain conduct that threatens the union.

There is then a tension in Section 101(a)(2) between the rights of union members and the right of the union to enforce reasonable rules that protect its existence as the selected bargaining agent. In *Sadlowski*, the Supreme Court provided guidance in determining the validity of union rules affecting its members' rights under Section 101(a)(2) LMRDA claims.

> To determine whether a union rule is valid under the statute, we first consider whether the rule interferes with an interest protected by the first part of § 101(a)(2). If it does, we then determine whether the rule is 'reasonable' and thus sheltered by the proviso to § 101(a)(2). In conducting these inquiries, we find guidance in the policies that underlie the LMRDA in general and Title I in particular. First Amendment principles may be helpful, although they are not controlling. We must look to the. objectives Congress sought to achieve, and avoid 'placing great emphasis upon close construction of the words.' *Wirtz v. Glass Bottle Blowers*, 389 U.S. 463, 468 n. 6, 88 S.Ct. 643, 646 n. 6, 19 L.Ed.2d 705 (1968) (*quoting Cox, Internal Affairs of Labor Unions Under the Labor Reform· Act of 1959*, 58 Mich. L.Rev. 819, 852 (1960)); *Hall v. Cole*, 412 U.S. 1, 11 n. 17, 93 S.Ct. 1943, 1949 n. 17, 36 L.Ed.2d 702 (1973). The critical question is whether a rule that partially interferes with a protected interest is nevertheless reasonably related to the protection of the organization as an institution.

*Sadlowski*, 457 U.S. at 111–12, 102 S.Ct. 2339.

■ Applying this analysis, I find that the RTWA did not violate plaintiffs' free speech rights. Furthermore, I find that Article XI of RTWA's Constitution is a reasonable limitation related to the protection of the union as an institution. Plaintiffs' conduct in actively campaigning to displace the RTWA with the CWA went far beyond speech critical of the union leadership. Plaintiffs admitted to forming the 'CWA Organizing Committee,' meeting with CWA's District Organizing Coordinator and other RTWA members at CWA's local office, preparing and distributing detailed leaflets and picture flyers urging RTWA members to join CWA, wearing CWA buttons and tee-shirts, and recruiting other RTWA members to join in their organizing campaign. Dkt. # 16, Ex. C; *see also* Plaintiffs' Interrogatory Responses at Dkt. # 16, Ex. E. These actions were specifically designed to oust the RTWA from Frontier. *See* Plaintiff Bockus Decl., Dkt. # 23 at ¶ 2 (admitting that plaintiffs engaged in these acts "to persuade ... fellow union members that [CWA] would be a more effective bargaining representative. for the employees of Frontier ....").

Importantly, ·the flyers do not call for the RTWA to change its own leadership, or for RTWA officers to resign, or for any other reform within the RTWA. *See* Dkt. # 16, Ex. A. Criticism of that character would be protected by Section 101(a)(2) of the LMRDA. Rather, the flyers here were part of an effort by plaintiffs to replace the RTWA with a rival union.

As the Tenth Circuit reasoned in *Aircraft Mechanics*, such conduct is not protected because, "[u]nlike internal political struggle and critical debate, which may unsettle current leadership but do not undermine the union as an institution, members' advocacy of representation elections and promotion of rival organizations therein obviously 'threaten[ ] the continued exis-

tence of the union [itself]' .... Moreover, such '[d]ual unionism impairs the ability of a union to carry out its collective bargaining responsibilities by diminishing its authority as bargaining representative.'" *Aircraft Mechanics,* 98 F.3d at 600–601, *quoting Mayle v. Laborer's Int'l Union of N. Am., Local 1015,* 866 F.2d 144, 146–47 (6th Cir.1988) and *Local 1199, Drug, Hosp. & Health Care Employees Union v. Retail, Wholesale & Dep't Store Union,* 671 F.Supp. 279, 286 (S.D.N.Y.1987).

Furthermore, the penalty imposed—expulsion—is an appropriate discipline for conduct constituting dual unionism. *See Aircraft Mechanics,* 98 F.3d at 601; *see also Mayle,* 866 F.2d at 146–47 (LMRDA permits expulsion of union member who threatened the union as an institution by helping to organize a rival union and recruited other members); *Ferguson v. Int'l Ass'n of Bridge,* 854 F.2d 1169, 1174–75 (9th Cir.1988) (dual unionism, even when coupled with protected speech, is subject to reasonable discipline under LMRDA § 101(a)(2)).

Plaintiffs' reliance on *Ballas v. McKiernan,* 35 N.Y.2d 14, 358 N.Y.S.2d 695, 315 N.E.2d 758 (1974), is misplaced. In *Ballas,* the New York Court of Appeals held that a union had improperly fined three of its members for actively supporting a rival union. However, *Ballas* is distinguishable because the penalty imposed was a monetary fine, not expulsion. While the distinction between fining a member and expelling her may seem inconsequential, it is not.

The National Labor Relations Board repeatedly has differentiated between expulsion and imposition of a fine in an analogous context under the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* ("NLRA"). Pursuant to Section 7 of the NLRA, every employee has the right to petition the Board to decertify his or her union. Section 8(b) of the NLRA provides that a union commits an unfair labor practice by restraining or coercing an employee in the exercise of any Section 7 right. However, Section 8 contains a proviso similar to the LMRDA Section 101(a)(2) proviso at issue here. Section 8(b)(1) permits a union to prescribe rules with respect to the acquisition or retention of membership. *See* 29 U.S.C. § 158(b)(1)(a). Relying on this language, the Board has held it to be an unfair labor practice for a union to *fine* a member for filing a decertification petition with the Board. However, the union does not commit an unfair labor practice by *expelling* a member for same conduct. *Compare Int'l Molders, Local No. 125 (Blackhawk Tanning Co.),* 1969 WL 23128, 178 N.L.R.B. 208 (1969), *enforced,* 442 F.2d 92 (7th Cir.1971) (union committed unfair labor practice by fining member for circulating petition for decertification of union) *with Price v. N.L.R.B.,* 373 F.2d 443, 447 (9th Cir.1967) (enforcing Board's determination that five year expulsion from membership for attempting to have union decertified was not an unfair labor practice); *see also Tawas Tube Prods., Inc.,* 151 N.L.R.B. 46 (1965) (expulsion from union for filing decertification petition not an unfair labor practice).

In distinguishing between the discipline imposed, the Board reasoned that "when a situation involves the loyalty of its members during a time of crisis for the union ... we cannot hold that a union must take no steps to preserve its own integrity ... [F]or we can conceive of no conduct by a union member more hostile or threatening to his union than [the filing of a decertification petition]." *Tawas Tube,* 151 N.L.R.B. at 48 (internal citations omitted); *see also Price,* 373 F.2d at 447; *Int'l Mold-*

ers, 1969 WL 23128 *5.[3] Furthermore, "[e]xpulsion eliminates the presence of an antagonistic member whose disloyalty would pose ... problems to the union." *Int'l Molders*, 442 F.2d at 94. Imposition of a fine, however, is considered a penalty meant only to deter others from exercising their protected Section 7 rights. *See, e.g., N.L.R.B. v. United Union of Roofers, Local No. 81*, 915 F.2d 508 (9th Cir.1990); *see also Int'l Molders*, 442 F.2d at 94 ("The assessment of a fine is not calculated to protect the threatened union."). Here, it is undisputed that RTWA did not fine plaintiffs.

*Ballas* is also distinguishable because the employer there was a closed shop. Therefore, had the employees refused to pay the fines, they could not otherwise leave the union (or be expelled) without losing their jobs. *See Aircraft Mechanics*, 98 F.3d at 601 (union goes beyond mere defensive measures when it fines a member for dual unionism "particularly [a member] forced to remain in the union to preserve his or her job—with financial penalties or adverse employment consequences."); *Price*, 373 F.2d at 446 (upholding discipline of expulsion for filing decertification petition, in part, because it affected only union membership status, not employee's job or other economic rights). Here, plaintiffs suffered no economic consequences or adverse employment action. In fact, it is undisputed that, following expulsion, the RTWA continued to represent plaintiffs' interests and to act as their collective bargaining representative. In fact, the RTWA filed and pursued grievances on behalf of some of its disciplined members and assisted others in severance and early retirement issues with Frontier. Dkt. # 18, ¶¶ 15–17.

The Supreme Court in *Sadlowski* held that, by drafting Section 101(a)(5)'s proviso as it did, Congress intended that "courts ... play a role in the determination of reasonableness." *Sadlowski*, 457 U.S. at 112 n. 4, 102 S.Ct. 2339. That determination, of course, must be made on a case-by-case basis. Here, given the history of the rivalry between the CWA and the RTWA, and the nature of the conduct involved, plaintiffs' expulsion from the RTWA did not violate the LMRDA. Accordingly, RTWA is entitled to summary judgment on plaintiffs' first and second claims.

### B. Claim regarding Plaintiff Laurie Dominick

RTWA also seeks summary judgment on plaintiff Laurie Dominick's claim that she was denied her right to a full and fair hearing. Section 101(a)(5) of the LMRDA provides that no union member may be disciplined unless such member has been provided specific charges in writing, given a reasonable time to prepare a defense, and afforded a "full and fair hearing." 29 U.S.C. § 411(a)(5). Dominick asserts that RTWA did not afford her a full and fair hearing because it failed to present any evidence against her and failed to notify her that her nonappearance would result in an automatic finding of guilt.

 To fulfill the LMRDA's full and fair hearing requirement, a union disciplinary

---

**3.** The Ninth Circuit in *Price* further reasoned that the member's conduct "sought to attack the union's position as bargaining agent, which is, as the Board says, in a very real sense an attack on the very existence of the union. We think that, at the least, the proviso was intended to permit the union to suspend or expel a member who takes such a position.

Otherwise, during the pre-election campaign, the member could campaign against the union while remaining a member and therefore privy to the union's strategy and tactics. We can see no policy reason for requiring the union to retain a member who takes such a position." *Price*, 373 F.2d at 447.

hearing only need "adhere to the 'basic principles of due process.'" *U.S. v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 385 (2d Cir.2001), *quoting Mayle,* 866 F.2d at 146. A hearing will be deficient where there has been a breach of fundamental fairness. *Wildberger v. Am. Fed'n of Gov't Employees,* 86 F.3d 1188, 1193 (D.C.Cir.1996). There must be evidence to support charges against a member. Courts have repeatedly held that a union member convicted on charges unsupported by any evidence is denied her Section 101(a)(5) due process rights. *Int'l Bhd. of Boilermakers v. Hardeman,* 401 U.S. 233, 246, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971); *see also Mayle,* 866 F.2d at 146.

■ Here, it is undisputed that the RTWA presented no evidence whatsoever at the hearing on the charges against Dominick. Her conviction was based solely on her nonappearance. Dkt. # 16, Ex. C. It is also undisputed that RTWA never advised Dominick that her nonappearance would result in a conviction. Moreover, nothing in RTWA's Constitution states that her failure to appear at the hearing automatically would result in a finding of guilt. The first time RTWA announced this rule was at the hearing itself.

RTWA is not entitled to summary judgment on Dominick's claim. RTWA's failure to present any evidence at the hearing in Dominick's absence violates Section 101(a)(5). In addition, I reject RTWA's argument that plaintiff waived her right to a fair hearing merely by virtue of her nonappearance. A waiver must be knowing and voluntary. Here, Dominick did not know that her failure to appear would result in a conviction. Therefore, Dominick could not have knowingly waived her right to have RTWA present some evidence of the charges against her. *See Schermerhorn v. Local 100, Transp. Workers Union of Am.,* No. 93 CIV. 6686, 1995 WL 677092 (S.D.N.Y. Aug. 17, 1995) (plaintiffs did not knowingly waive their right to a fair hearing because the hearing notice was ambiguous as to certain procedures); *Goodman v. Laborers' Int'l Union of N. Am.,* 742 F.2d 780, 783 (3rd Cir.1984) (holding that plaintiff's failure to appear could not constitute a waiver of his right to an unbiased fact finder); *but see Ritz v. O'Donnell,* 566 F.2d 731 (D.C.Cir.1977) (finding that due process rights may be waived under certain circumstances).

If RTWA had presented some evidence at the hearing of the charges against Dominick and then found her guilty, she would have been afforded her due process rights, despite her absence from the hearing. *See Stewart v. St. Louis Typographical Union No. 8,* 451 F.Supp. 314 (E.D.Mo.1978) (rejecting due process challenge at hearing held in member's absence because there was "some evidence" to support the decision reached by the trial board).

I also reject RTWA's argument that the process here was adequate. The Committee voted to expel Dominick based solely on the fact that she did not appear. This procedure violates notions of fundamental fairness that the LMRDA was designed to protect.

There being no issues of material fact in dispute, judgment is granted in favor of plaintiff, Laurie Dominick. *See Bridgeway Corp. v. Citibank,* 201 F.3d 134, 139–40 (2d Cir.2000). Under the circumstances of this case, I find as a matter of law that Dominick was denied her right to a full and fair hearing. The Court hereby orders that Dominick be reinstated as a member of the RTWA.[4]

---

4. This decision does not preclude the RTWA from reinstituting charges against Dominick

and prosecuting her using legal procedures

### 2. *Plaintiffs' Motion to Amend*

Plaintiffs move to amend their complaint to add a claim based on Section 101(a)(5) of the LMRDA based on evidence obtained in discovery that plaintiffs believe establish that the Committee was biased and had prejudged their case.

RTWA officers Darlene Kelly and Marie Rodgers testified that at least some of the Committee members were aware of the allegations against plaintiffs and wanted to bring them up on charges. *See* Dkt. # 14, Ex. F at 32–34, 104–105, and 129. In my view, this information does not justify granting leave to file an amended complaint because to do so would be futile.

Recognizing that leave to amend "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), no amendment should be granted when plaintiffs could not prevail on the amended claim. *Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.2001) ("even if the amended complaint would state a valid claim on its face, the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law under Fed.R.Civ.P. 56(c).").

The law is very clear that unbiased fact finders are "fundamental to a full and fair hearing and procedural due process." *Myers v. Affiliated Prop. Craftsmen Local No. 44*, 667 F.2d 817, 820 (9th Cir.1982). Where there is evidence that the members of the tribunal prejudged the guilt of the accused, the LMRDA's guarantee to a full and fair hearing would be compromised. *Mayle*, 866 F.2d at 146; *see also Perry v. Int'l Longshoremen's Ass'n*, 638 F.Supp. 1441, 1448 (S.D.N.Y.1986).

Here, however, the Committee did not judge plaintiffs' guilt. Plaintiffs pleaded guilty to the charges at the hearing.

including a hearing that comports with due

Therefore, any alleged knowledge that the Committee may have had about plaintiffs' dual union activities could not have affected plaintiffs' rights to full and fair hearings.

Plaintiffs' reliance on *Aiello v. City of Wilmington*, 426 F.Supp. 1272 (D.Del. 1976) is misplaced. *Aiello* is a case based on 14th Amendment due process protections, not the LMRDA. Due process under Section 101(a)(5) of the LMRDA is not coextensive with Constitutional due process protections. *See Mayle*, 866 F.2d at 146. Moreover, *Aiello* is factually dissimilar because the Court found that the penalty imposed (suspension from employment) was not necessarily warranted, and summary judgment was denied on that issue. *Aiello*, 426 F.Supp. at 1292. Therefore, bias could have had an impact on the penalty imposed. Here, as discussed above, expulsion is an appropriate discipline for dual unionism under the LMRDA. Therefore, any prejudgment of the penalty to impose, as a matter of law, could not have denied plaintiffs' their right to a full and fair hearing. Accordingly, plaintiffs' motion to amend is denied.

### Conclusion

For the foregoing reasons, plaintiffs' motion to amend their complaint (Dkt. # 12) is denied, and RTWA's cross-motion for summary judgment (Dkt. # 16) is granted in part and denied in part. The Court, *sua sponte*, grants summary judgment to plaintiff Laurie Dominick and directs that she be immediately reinstated as a member of RTWA. Plaintiffs' motion for additional discovery (Dkt. # 28) is denied as moot.

IT IS SO ORDERED.