152 F.3d 58
 MEMBERS FOR A BETTER UNION; Carlos Guzman; Dominick
Bentivenga and Frank Colon, Plaintiffs-Appellees,
v.
Gus BEVONA, as President of Local 32B-32J, Service Employees
International Union, Defendant-Appellant.
 No. 1836, Dockets 97-9591, 98-7129 and 98-7139.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 9, 1998.
Decided July 15, 1998.
 
 Franklin K. Moss, New York City (Spivak, Lipton, Watanabe, Spivak & Moss LLP, on the brief), for Defendant-Appellant.
 Arthur Z. Schwartz, New York City (Lauren Esposito, Kennedy, Schwartz & Cure, on the brief), for Plaintiffs-Appellees.
 (Alan Hyde, Rutgers University School of Law, Newark, NJ, Clyde W. Summers, University of Pennsylvania Law School, Philadelphia, PA, for amicus curiae Association for Union Democracy, Inc.)
 (Douglas Donald Menagh, Menagh, Trainor, Mundo & Falcone, P.C., New York City, General Counsel, New York City Central Labor Council, for amicus curiae New York City Central Labor Council.)
 Before: VAN GRAAFEILAND, JACOBS, and LAY,* Circuit Judges.
 Judge VAN GRAAFEILAND dissents in a separate opinion.
 JACOBS, Circuit Judge:
 
 
 1
 Defendant Gus Bevona, president of a union local, appeals from four orders of the United States District Court for the Southern District of New York (Owen, J.) entered to promote the fairness of the membership's vote on constitutional amendments proposed by the plaintiff union members. The first of the four orders prescribed the date, time, location, and procedure for the vote. The second order re-scheduled the vote for an earlier date. The third order enjoined the leadership of the local from asking any employer to give union members time off so that union members could be addressed by officials of the local. The fourth order prohibited officials of the local from transporting (or offering to transport) members to the polling place. The district court found that a previous vote conducted by the local had violated members' rights under § 101(a)(1) of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(1) (1985), and that there was a genuine threat of future violations. We conclude that the complaint does not allege a violation of § 101(a)(1), which bars unequal treatment of union members in the exercise of their voting rights, and that any exception to that scope of the statute is inapplicable here. Therefore, pursuant to Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), we hold that the district court lacked subject matter jurisdiction, vacate the orders on appeal, and remand with instructions to dismiss.[1]
 
 BACKGROUND
 
 2
 The plaintiffs are dissident members of Local 32B-32J of the Service Employees International Union, AFL-CIO ("the union"), which represents approximately 60,000 service workers, including doormen, elevator operators, and security guards, employed in commercial and residential buildings in the New York City metropolitan area.[2]
 
 
 3
 In November 1996, plaintiff Carlos Guzman proposed a number of amendments to the union's constitution, and submitted them for a vote by the membership. If adopted, the proposed amendments would have required: ratification of collective bargaining agreements by the membership; the popular election of shop stewards and business agents; a formula for setting the salaries of members of the union's executive board; and establishment of a strike fund. Guzman requested that the vote on the proposed amendments be conducted "by all-day balloting (from 6 AM to 9 PM)" and that he be afforded the same opportunity as the union's elected leadership to use union resources to express his views on the amendments. The union announced that the vote on the proposed amendments would be conducted at two membership meetings to be held on February 17, 1997. In a letter to Guzman's counsel, the union explained that under its constitution and by-laws, voting on constitutional amendments must be conducted at membership meetings, but agreed to hold one meeting at 2 pm, and another at 6 pm, in order to accommodate members on different work shifts. The union also agreed to arrange, but not to pay for, the mailing to the membership of literature in support of the amendments.
 
 
 4
 On February 13, 1997, plaintiffs filed a complaint in the United States District Court for the Southern District of New York, seeking a preliminary injunction to stay the impending vote on the proposed amendments. Plaintiffs alleged that the union violated the LMRDA by scheduling the vote at times that would not accommodate all shifts, by refusing to publish the proposed amendments in the union newspaper, and by publishing the negative recommendation of the union's executive committee without giving the plaintiffs an opportunity to respond.
 
 
 5
 The district court declined to stay the vote, but ordered that the poll be open continuously from 2:00 p.m. to 9:00 p.m. "so that all members, regardless of whether far or near, or which of the many differing shifts they were on, could have a chance to vote." Members for a Better Union v. Bevona, 988 F.Supp. 307, 313 (S.D.N.Y.1997) (Members II ). The court dictated that the membership be notified of the expanded hours as quickly as possible. Id.
 
 
 6
 The vote was conducted on February 19, 1997 as ordered, at the Sheraton Hotel in Manhattan. All three plaintiffs cast ballots. The proposed amendment was defeated.
 
 
 7
 Plaintiffs later re-submitted their proposed amendments (and three new ones) for another vote by the union membership. Plaintiffs also filed an Amended and Supplemental Complaint, claiming that the first vote violated § 101(a)(1) and (2) of LMRDA because (i) the voting times set by the district court (and the union's failure to notify members of the extended hours) deprived many members of the equal right to vote; (ii) the union's refusal to publish plaintiffs' proposals in the union newspaper deprived members of the informed right to vote; and (iii) the actions of union leaders during the vote rendered the referendum unfair. By way of relief, the plaintiffs sought a declaration that the February 19, 1997 vote violated the LMRDA, punitive damages, and a permanent injunction requiring that all future votes on constitutional amendments proposed by them be conducted from 6 a.m. to 9 p.m. and be supervised by an independent third-party watchdog designated by the court.
 
 
 8
 The union then moved to dismiss plaintiffs' complaint for failure to state a claim under the LMRDA. The district court dismissed one of plaintiffs' claims on the ground that the allegations were insufficient to state a cause of action under either § 101(a)(1) or (2) the LMRDA, but held that plaintiffs' other two claims did state a viable cause of action under § 101(a)(1). See Members for a Better Union v. Bevona, 972 F.Supp. 240, 244-45 (S.D.N.Y.1997) (Members I ). After a five-day bench trial, the district court found that the February 19, 1997 vote was conducted in a manner that violated the rights of union members under § 101(a)(1) of the LMRDA, and that there was a sufficient threat of future injury to warrant an injunction to regulate the vote on the plaintiffs' second set of proposed constitutional amendments. Members II, 988 F.Supp. at 319. Accordingly, the court ordered that the second vote be conducted from 6 a.m. to 9 p.m. at three separate locations under the supervision of the American Arbitration Association. The court allowed the union to conduct membership meetings at the voting locations, but ordered that "the voting itself shall take place in a separate room in which there are to be no statements or exhibitions of points of view by either side, including discussion, leafletting, and the wearing of buttons or badges." Id. at 321. As to the ballot, the court prescribed its layout, required that it be printed on one side only, ordered that each amendment be printed in Spanish right under the English text, and excluded reference to the executive board's recommendation. Id.
 
 
 9
 The union then filed an expedited appeal. The district court, upon learning that this Court had scheduled oral argument for the week of February 9, 1998, moved the date of the vote to Wednesday, February 4, 1998.
 
 DISCUSSION
 
 10
 Jurisdiction is in issue on every appeal, because "the judicial power of the United States must not be exerted in a case to which it does not extend, even if both parties desire to have it exerted." Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 384, 4 S.Ct. 510, 512, 28 L.Ed. 462 (1884). Even if the parties do not directly address the jurisdictional issue, we do so sua sponte whenever it appears that jurisdiction may be lacking. See Atlantic Healthcare Benefits Trust v. Googins, 2 F.3d 1, 4 (2d Cir.1993). This appeal presents two jurisdictional issues that have the potential to operate as a threshold bar: mootness and subject matter jurisdiction. We conclude that the appeal is not moot, but that the district court lacked subject matter jurisdiction over the plaintiffs' claims.
 
 
 11
 A. Mootness.
 
 
 12
 We questioned at oral argument whether, after the February 4, 1998, vote, this appeal is moot. Plaintiffs argued that a live controversy remains because they intend to seek a permanent injunction that would require all future votes on constitutional amendments to be conducted by a neutral party during extended voting hours. Plaintiffs also indicated that they remain undecided whether to challenge the conduct and outcome of the February 4, 1998, vote under the LMRDA.
 
 
 13
 We conclude that, although this appeal is moot, it comes within the exception to the mootness doctrine for issues "capable of repetition, yet evading review." Southern Pacific Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Outside the class-action context, this exception applies only if (1) the challenged action was too short in duration to be fully litigated prior to its expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to that same action in the future. Muhammad v. City of New York Dep't of Corrections, 126 F.3d 119, 122 (2d Cir.1997), (citing Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam )). Here, the union's challenge to the district court's order could not be fully litigated before the February 4 vote. Indeed, after learning that this Court had scheduled oral argument in this expedited appeal for the week of February 9, the district court moved the date of the vote from the end of February to the February 4--a change that ensured that the union's challenge to the district court's order would not be fully litigated before the vote had been concluded. Furthermore, plaintiffs' intention to seek permanent injunctive relief in this case confirms that "these same parties are reasonably likely to find themselves again in dispute over the issues raised in this appeal." Id. at 124 (internal quotation marks omitted) (quoting Video Tutorial Serv., Inc. v. MCI Telecomms. Corp., 79 F.3d 3, 6 (2d Cir.1996) (per curiam )). Accordingly, mootness does not preclude appellate review of the district court's order in this case. See also Johnson v. Kay, 860 F.2d 529, 538 (2d Cir.1988).
 
 
 14
 B. Subject Matter Jurisdiction.
 
 
 15
 Both parties assert that the district court has subject matter jurisdiction under § 102 of the LMRDA, which provides:
 
 
 16
 Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate.
 
 
 17
 29 U.S.C. § 412 (1985). However, the Supreme Court has held that the existence of jurisdiction under § 102 depends upon whether the specific allegations in the complaint reflect an infringement of rights protected under Title I the LMRDA. Calhoon v. Harvey, 379 U.S. 134, 138, 85 S.Ct. 292, 295, 13 L.Ed.2d 190 (1964); see also Johnson, 860 F.2d at 536 (same). We conclude that the plaintiffs' complaint fails to meet that test, and that the district court therefore lacks subject matter jurisdiction over this case.[3]
 
 
 18
 1. The Complaint.
 
 
 19
 The Amended and Supplemental Complaint, filed on March 19, 1997, alleges that the first vote on plaintiffs' proposed amendments violated the LMRDA in three ways, expressed in three causes of action:
 
 
 20
 (i) the voting times ordered by the district court, and the union's failure to notify thousands of members of the extended voting hours, deprived many working members the equal right to vote, in violation of § 101(a)(1) of the LMRDA;
 
 
 21
 (ii) the union's refusal to publish plaintiffs' proposals in the union newspaper, and the publication of a negative recommendation by the union's executive board, deprived the members an informed right to vote, in violation of § 101(a)(1) and (2) of the LMRDA; and
 
 
 22
 (iii) the voting was tainted and unfair because: the ballot featured the unanimous "VOTE NO" recommendation of the union's joint executive committee, and was difficult to understand; no private space was provided for the marking of the secret ballots; union officers, delegates and others roamed the voting area, and electioneered; persons who registered the members and handed out the ballots wore "Vote No" stickers; a shortage of space and personnel during peak periods caused long, disorderly lines that discouraged members from voting; and ballot boxes were moved out of the voting area and left unattended. This conduct was alleged to constitute a violation of § 101(a)(1) of the LMRDA.
 
 
 23
 The district court dismissed Plaintiffs' second cause of action, concluding that neither § 101(a)(1) or (2) of the LMRDA required the union to publish plaintiffs' views in the union newspaper. The court held that plaintiffs' other two causes of action were viable under § 101(a)(1) because:
 
 
 24
 [a] fair referendum assuring the equal right to vote under § 101(a)(1) includes the right of members to have the vote scheduled at a time when they can exercise their vote and the right to be free from intimidation or fear of reprisal from union officials....
 
 
 25
 Members I, 972 F.Supp. at 244.
 
 
 26
 2. Section 101(a)(1).
 
 
 27
 Title I of the LMRDA has been called a "Bill of Rights" that guarantees union members the equal right to vote and participate in union decisions, the right to free speech and assembly, and protection from improper discipline by union officers. Local No. 82 v. Crowley, 467 U.S. 526, 536-37, 104 S.Ct. 2557, 2563, 81 L.Ed.2d 457 (1984). Section 101(a)(1) of Title I provides in full:
 
 
 28
 Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
 
 
 29
 29 U.S.C. § 411 (1985) (emphasis added). Plaintiffs claim that the union violated union members' equal rights under § 101(a)(1) by conducting the vote when a large number of members were working, and by engaging in conduct that "tainted the vote" and rendered it unfair. We conclude, however, that these allegations are insufficient to establish even a colorable violation of § 101(a)(1).
 
 
 30
 We rely on the Supreme Court's interpretation of § 101(a)(1) in Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). In Calhoon, three union members sued to enjoin union elections on the ground that the union's by-laws restricted the power of the members to nominate candidates for union offices, in violation of § 101(a)(1). The Court explained that the "[j]urisdiction of the District Court under § 102 of Title I depend[ed] entirely upon whether th[e] complaint showed a violation of rights guaranteed by § 101(a)(1)." Id. at 138, 85 S.Ct. at 295. No violation appeared because there was no allegation that the exercise of plaintiffs' voting rights had been impaired by discrimination:
 
 
 31
 Plainly, [§ 101(a)(1) ] is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote. And Congress carefully prescribed that even this right against discrimination is subject to reasonable rules and regulations by the union. The complaining union members here have not been discriminated against in any way and have been denied no privilege or right to vote or nominate which the union has granted to others.
 
 
 32
 Id. at 139, 85 S.Ct. at 295 (internal quotation marks omitted). The Court held that the district court therefore lacked jurisdiction to grant the requested relief. Id., 379 U.S. at 138, 85 S.Ct. at 296.
 
 
 33
 Following Calhoon, we have read § 101(a)(1) to prohibit the unequal treatment of union members with respect to their voting rights. In Gurton v. Arons, 339 F.2d 371 (2d Cir.1964), for example, we affirmed the dismissal of a complaint alleging that the international executive board of a union had violated § 101(a)(1) by nullifying (in contravention of the union's constitution and by-laws) a resolution adopted by a majority of a union local. We cautioned that the right to an equal vote was "not a general commission for the federal courts to review the constitution and by-laws of a union," id. at 374, and that "[a]s long as no claim is made that provisions of the constitution and by-laws are being applied in such a way as to deny equality in voting, there is nothing in Section 101 which authorizes consideration of those documents." Id.; see also Navarro v. Gannon, 385 F.2d 512, 520 (2d Cir.1967) (under Calhoon, "voting rights protected by Section 101(a)(1) must be directly attacked to warrant suit under Section 102.").
 
 
 34
 Similarly, in Fritsch v. District Council No. 9, Bhd. of Painters, 493 F.2d 1061 (2d Cir.1974), members of non-autonomous locals alleged that their voting rights were diluted in violation of § 101(a)(1), because autonomous locals could participate in the selection of the collective bargaining representative for the non-autonomous locals, but the autonomous locals were free to select their own. The plaintiffs argued that this arrangement "diluted" their voting rights in violation § 101(a)(1). Id. at 1062. Noting that "the essence of Title I is the command not to discriminate against members and classes of members in their right to vote and nominate," we observed that the plaintiff members of non-autonomous locals could not claim that they had been denied the right to vote, or that "the votes of some members count more than the votes of others." Id. at 1063. We therefore concluded that plaintiffs' complaint failed to show a violation of § 101(a)(1).
 
 
 35
 More recently, we considered a union rule that disqualified from voting those members who worked as contractors, and held that it imposed no discrimination under § 101(a)(1) because it applied equally to all members. Myers v. United Bhd. of Carpenters & Joiners, 684 F.2d 225, 227 (2d Cir.1982). Similarly, we declined to interfere with a referendum on a proposed affiliation among unions because § 101(a)(1) "prohibits discrimination against members and classes of members in their right to vote," but does not otherwise justify judicial interference with procedures established for conducting the referendum. Amirault v. Shaughnessy, 749 F.2d 140, 144-45 (2d Cir.1984) (emphasis added).
 
 
 36
 3. The District Court's Analysis.
 
 
 37
 In the case now on appeal, the district court did not explicitly address subject matter jurisdiction under § 102, but it did find that the plaintiffs stated a viable claim under § 101(a)(1). See Members I, 972 F.Supp. at 244-45. In reaching that conclusion, the court relied primarily upon our opinion in Sheldon v. O'Callaghan, 497 F.2d 1276 (2d Cir.1974). We think that Sheldon--in which we recognized a claim under § 101(a)(1) in the absence of discrimination against the voting rights of a specific union member or group of members--is an exception to the rule of Calhoon, possibly an anomaly, and that the district court read that narrow case to open a broad exception to our otherwise consistent reading of § 101(a)(1). Sheldon involved a referendum to be conducted by mail on a new union constitution. Union members opposed to the new constitution (the plaintiffs) asked the union officers for an opportunity to express their views to the membership by means of the union newspaper, or by use of the union mailing list (at the cost of the plaintiffs). Id. at 1279. These requests were denied. Id. After ratification of the new constitution, the plaintiffs brought an action to enjoin its effectiveness, arguing that the officers infringed their rights under § 101(a)(1).
 
 
 38
 Sheldon recited the general principle, "the provisions of the LMRDA were not intended to constitute an open invitation to the courts to intervene in the internal affairs of a union." Id. at 1281. But Sheldon decided nevertheless that the union officers "had a duty under the LMRDA to conduct a fair referendum" which, "under the facts of [the] case, included the right of members whose views were opposed to defendants' to have an opportunity to present their views to other members of the union." Id. at 1282. Sheldon rejected the argument that the officers were required to give the plaintiffs space in the union newspaper, but it held that the LMRDA did require the officers to make the mailing list available to a mailing service chosen by the defendants, so the plaintiffs could express their views to union members. Id. at 1282-83. Sheldon distinguished Calhoon and Gurton in a footnote, explaining in fact-specific terms that, "[i]n this case," the union officials' "stiff-necked refusal even to provide their opponents access to the membership mailing list rendered the referendum procedure so patently unfair that their conduct can fairly be deemed a denial of the [members'] equal right to vote in elections or referendums." Id. at 1283 n. 9 (internal quotation marks omitted).
 
 
 39
 Sheldon has been cited in cases for the proposition that union leaders must make the union mailing list available to opponents who wish to express their views to the membership. See, e.g., Johnson v. Kay, 671 F.Supp. 268, 278 (S.D.N.Y.1987), aff'd 860 F.2d 529 (2d Cir.1988). We have no occasion to consider or reconsider Sheldon 's viability on that score, because here the union offered to arrange a mailing for the plaintiffs in connection with their proposed amendments.
 
 
 40
 Sheldon notwithstanding, the plain language of § 101(a)(1) states that union members shall have "equal rights and privileges" to vote in union elections and referendums (emphasis added), and thereby curbs no abuse other than discrimination against some union members and in favor of others with respect to voting rights. This is the rule of Calhoon, and has controlled our decisions both before and after Sheldon. To be viable, a claim under § 101(a)(1) must therefore allege the denial of some privilege or right to vote which the union has granted to others. To the extent that Sheldon suggests some other principle, it is hard to see what that principle is, or how it could be framed to avoid conflict with the rule of Calhoon. See also Ackley v. Western Conference of Teamsters, 958 F.2d 1463, 1473-1474, 1476 n. 10 (9th Cir.1992) (reaffirming the rule of Calhoon and questioning Sheldon ).
 
 
 41
 The district court, in concluding that the plaintiffs stated a viable claim under § 101(a)(1), also relied upon the opinion of the District of Columbia Circuit in Bunz v. Moving Picture Machine Operators' Protective Union Local 224, 567 F.2d 1117 (D.C.Cir.1977). In Bunz, a union member argued that the union denied him the equal right to vote under § 101(a)(1) by issuing a "patently frivolous" interpretation of its constitution, which raised the percentage of votes necessary to defeat an assessment. The D.C. Circuit concluded that the district court had jurisdiction because the plaintiff was "deprived of his equal right to cast a meaningful vote," and was therefore discriminated against in violation of § 101(a)(1). Id. at 1122 (emphasis added). The D.C. Circuit allowed that "the only significant argument against this conclusion would be based on language in a series of Second Circuit cases" which "suggest that § 101(a)(1) is violated only when the union's discrimination is evidenced by a more direct attack on the right to vote than occurred here." Id. The court then offered three reasons why those cases did not defeat jurisdiction over the plaintiff's case: (1) the "narrow approach" had not been followed consistently by the Second Circuit, (2) the "policy concerns" behind that approach had "to some extent been eroded," and (3) the risk of judicial interference in internal union affairs was "minimal" in that particular case. Id. at 1123-24.
 
 
 42
 None of these grounds induce us to deviate from Calhoon 's unequivocal interpretation of § 101(a)(1), which we have applied repeatedly, and almost consistently. Gurton emphasizes that "[t]he internal operations of unions are to be left to the officials chosen by the members to manage those operations except in the very limited instances expressly provided by the [LMRDA]." Gurton, 339 F.2d at 375. More recently, in Amirault v. Shaughnessy, 749 F.2d 140, 145 (2d Cir.1984), we emphasized our reluctance to "intrude[ ] judicial preferences into the legitimate autonomy" of a union. See also Clayton v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, 451 U.S. 679, 688-89, 101 S.Ct. 2088, 2094-95, 68 L.Ed.2d 538 (1981) (recognizing "the policy of forestalling judicial interference with internal union affairs" arising out of § 101(a)(4) of the LMRDA). In other words, Congress has conferred on the courts no broad authority to control or mitigate the power that union leaders exercise over (or against) union members.
 
 
 43
 We conclude that the allegations in the plaintiffs' complaint do not state a viable claim under § 101(a)(1), and that the district court therefore lacked jurisdiction under § 102. The complaint contains no allegation that the plaintiff members of this local have been discriminated against or have been denied a right to vote that the union has granted to other members. Plaintiffs allege that the timing of the vote may have dissuaded other members from voting, but the same detriments applied equally to all the members. Plaintiffs also claim that the vote was "tainted" by the actions of union leadership and was therefore unfair. This, too, fails to allege any form of discrimination against the voting rights of a union member or group of members, and therefore falls short of the requirement established by Calhoon.
 
 CONCLUSION
 
 44
 For the above reasons, the orders of the district court are vacated, and the case is remanded with instructions to dismiss for lack of jurisdiction.
 
 VAN GRAAFEILAND, Circuit Judge, dissenting:
 
 45
 The essence of my disagreement with my colleagues is found in the following excerpt from the majority opinion:
 
 
 46
 The district court found that a previous vote conducted by the local had violated members' rights under § 101(a)(1) of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(1) (1985), and that there was a genuine threat of future violations. We conclude that the complaint does not allege a violation of § 101(a)(1), which bars unequal treatment of union members in the exercise of their voting rights, and that any exception to that scope of the statute is inapplicable here.
 
 
 47
 When a district court undertakes to decide the issue of its jurisdiction, it should inquire into the facts "as they exist." Land v. Dollar, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). Moreover, where, as here, the jurisdictional issue and the substantive issues are so intertwined that the answer to the question of jurisdiction is dependent on the resolution of the factual issues going to the merits, determination of the former should await determination of the latter. Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir.1983).
 
 
 48
 In the seminal case of Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the Supreme Court expressed the foregoing principle as follows:
 
 
 49
 Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.
 
 
 50
 We have followed the teaching of Bell v. Hood. See Spencer v. Casavilla, 903 F.2d 171, 173 (2d Cir.1990) (court "should not dismiss a complaint asserting a nonfrivolous claim under federal law for lack of jurisdiction even if complaint fails to state a claim upon which relief can be granted"); AVC Nederland B.V. v. Atrium Inv. Partnership, 740 F.2d 148, 152-53 (2d Cir.1984) ("Bell v. Hood ... instructs us that, when the contested basis of federal jurisdiction is also an element of plaintiff's asserted federal claim, the claim should not be dismissed for want of jurisdiction except when it 'appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantiated and frivolous.' ").
 
 
 51
 Other courts of appeals also have cited Bell v. Hood as controlling authority on this point. See. e.g., Estate of Soler v. Rodriguez, 63 F.3d 45, 47 n. 1 (1st Cir.1995); Haddon v. Walters, 43 F.3d 1488, 1490-91 (D.C.Cir.1995); Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc., 840 F.2d 236, 239 (4th Cir.1988); Clark v. Tarrant County, Texas, 798 F.2d 736, 741-42 (5th Cir.1986).
 
 
 52
 In the instant case, the district court conducted a one-week trial to develop the facts "as they exist[ed]." Its findings are reported in Members for a Better Union v. Bevona, 988 F.Supp. 307, 320 (1997), as follows:
 
 
 53
 [W]here union officials have continuously heretofore attempted to suppress dissent, as has happened here, the courts of this district have not been hesitant to order appropriate relief. I find that such action is called for here. In general, union voting is almost sui generis since it is recognized that there is an enormous risk of abuse of power by the incumbent leadership. Here, there have been abuses of power that resulted in an inadequate notice of the vote in terms of both its hours and its substance, a lack of access to the vote for substantial numbers of members in terms of its location and hours, a ballot troublesome in form and content, and most troubling of all, a pattern of intimidation of voting members by the Local leadership, all causing the February 19, 1997 vote to have been conducted in violation of the rights of the members of Local 32B-32J, including plaintiffs, under Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1). (citations and footnote omitted)
 
 
 54
 In the light of the foregoing findings, based upon the facts as the district court found them to exist, I cannot agree with my colleagues' conclusion that "the allegations in the plaintiffs' complaint do not state a viable claim under § 101(a)(1), and that the district court therefore lacked jurisdiction under § 102."[1]
 
 
 
 *
 Honorable Donald P. Lay, of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 Defendant filed three appeals in this case. Appeal No. 97-9591 challenged the district court's first order, entered on December 15, 1997. Appeal No. 98-7129 concerned the district courts second and third orders, entered on December 29, 1997, and January 26, 1998, respectively. Appeal No. 98-7139 concerned the district court's fourth order, entered on February 3, 1998. After hearing argument in appeal No. 97-9591 and receiving submissions regarding Nos. 98-7129 and 98-7139, we consolidated all three appeals. See Order dated April 15, 1998. We now dispose of the appeals collectively
 
 
 [2]
 Members for a Better Union, a caucus of members of Local 32B-32J, was also named as an original plaintiff, but was dismissed by the district court for lack of standing
 
 
 [3]
 Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), says that the failure to state a cause of action ordinarily calls for dismissal on the merits, not for dismissal for lack of jurisdiction. After Calhoon, however, the jurisdictional sufficiency of a claim under Title I of the LMRDA depends in the first instance on the allegations in the complaint. In Calhoon, the Court found that the failure of plaintiffs' allegations under Title I of the LMRDA amounted to a jurisdictional defect rather than a failure to state a claim, and remarked that the question of Bell v. Hood "need not concern us here." Calhoon, 379 U.S. at 137 n. 9, 85 S.Ct. at 294 n. 9
 Judge Van Graafeiland in dissent relies upon Bell v. Hood to arrive at the conclusion that dismissal for lack of jurisdiction is inappropriate when the jurisdictional question turns on factual issues that also bear upon the merits. The dissent, however, does not reckon with Calhoon.
 
 
 [1]
 The majority suggests that my reliance on Bell v. Hood is misplaced on the grounds that I "do[ ] not reckon with Calhoon." Maj. op. at 62 n. 3. This is not so. In Calhoon, the case came to the Supreme Court strictly as an issue of jurisdiction, i.e., whether suit should have been brought under § 102(1) of Title I of the Labor Management Reporting and Disclosure Act, 49 U.S.C. § 412, or under § 402 of Title IV of the Act, 49 U.S.C. § 482. The district court opted for § 402; the Court of Appeals for § 102. The Supreme Court limited its discussion to the issue that divided the courts below. In footnote 9 of Justice Black's majority opinion he said:
 While both courts below referred to the question before us as "jurisdictional," it is obvious that the courts differed as to whether the facts alleged in the complaint stated a "cause of action," thereby raising some of the same problems discussed in Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939. That question need not concern us here, however.
 379 U.S. at 137, 85 S.Ct. 292
 In the instant case, both parties assert that the district court had subject matter jurisdiction under § 102, and my colleagues hold that the complaint does not allege a violation of that section. Under Calhoon, therefore, the problems discussed in Bell v. Hood are matters of concern here.