Sandy STOJANOV, et al., Plaintiffs,

v.

**ROCHESTER TELEPHONE WORKERS ASSOCIATION,**
Defendant.

**No. 02–CV–6616L.**

United States District Court,
W.D. New York.

April 29, 2003.

Jonathan George Johnsen, Creighton, Pearce, Johnsen & Giroux, Buffalo, NY, for Sandy Stojanov, Kevin Spelman, Barbara Bockus, Ann Lembaris, Christopher Bold, Plaintiffs.

Michael T. Harren, Chamberlain, D'Amanda, Oppenheimer & Greenfield, Rochester, NY, for Rochester Telephone Workers Ass'n, Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

## INTRODUCTION

Plaintiffs are five current or former members of the Rochester Telephone Workers Association ("RTWA" or "the union") who seek relief pursuant to the Labor Management Reporting Disclosure Act, 29 U.S.C. § 401, *et seq.* ("LMRDA"). Plaintiffs' complaint alleges that the union violated their rights guaranteed by Sections 101(a)(1) and (a)(2) of the LMRDA in connection with a November 2002 election in which the RTWA membership voted to affiliate with the Union of Needletrades, Industrial, and Textile Employees ("UNITE"), a national union.

Currently pending before the Court is plaintiffs' motion for a preliminary injunction seeking to invalidate the affiliation election, and order a new election held under what plaintiffs describe as circumstances that would ensure "an informed and meaningful" vote. Plaintiffs previously moved for a temporary restraining order to block the pending affiliation election. I denied that motion on November 27, 2002.

After denying the TRO, the Court gave the parties additional time within which to file further written materials on the motion for preliminary injunction. Dkt. # 10. RTWA filed the affidavit of Darlene Kelly, its Secretary and Treasurer. Dkt. # 14. Plaintiffs filed only a supplemental memorandum of law. Dkt. # 15. They filed no other evidence and chose to rely on their filings in support of their application for the TRO, which included several unsworn statements from certain Frontier employees. *See* Dkt. # 5.

For substantially the same reasons that I denied the TRO, I likewise deny plaintiffs' motion for a preliminary injunction.

## FINDINGS OF FACT

Until the affiliation with UNITE, RTWA had always been an independent local union. However, on November 15, 2002, the RTWA Executive Board and Board of Representatives announced to the RTWA membership that it had unanimously approved a resolution to affiliate with UNITE. One of the primary reasons the RTWA leadership elected to affiliate with UNITE was because of past campaigns by a rival union, the Communications Workers of America, AFL–CIO ("CWA"), to gain support among RTWA members.

The November 15 announcement was the first time that RTWA informed its members that an affiliation was being considered. Further, the election to accept or reject the affiliation agreement between RTWA and UNITE occurred on Tuesday, November 26, 2002, just eleven days after the election was announced. RTWA did not announce the time or place of the election until November 20.

RTWA held two informational meetings on the proposed affiliation. The first occurred on November 20 at the UNITE office. Approximately 47 bargaining unit members attended. RTWA President Marie Rodgers announced that she would not answer any questions about the CWA, or any proposals for RTWA to affiliate with it instead of UNITE. In addition, RTWA did not permit expelled members from attending the meeting to voice their opposition to affiliation. Plaintiffs Bockus and Lembaris were among those former RTWA members who were excluded from the informational meeting.

A second meeting was held on November 22 at RTWA offices. At the meeting, Rodgers stated that RTWA would not, under any circumstances, affiliate with CWA, even if the membership rejected the affiliation agreement with UNITE.

Plaintiff Stojanov requested a copy of the proposed affiliation agreement, but RTWA denied her request. She also requested a telephone and mailing list of all RTWA members in order to contact them to express her opposing views on affiliation. RTWA Secretary Darlene Kelly informed Stojanov that she would need to check with RTWA's attorney first because the membership list contained confidential information. The record indicates that Stojanov never obtained a copy of the membership list, but does not indicate why RTWA denied her request.

On November 26, 2002, RTWA members voted in favor of affiliation with UNITE by a vote of 285 to 106. Approximately eleven challenged ballots were cast by members whose status with the RTWA was under review. Those votes were never counted because they would not have affected the outcome of the election.

## DISCUSSION

### I. Preliminary Injunction Standard

█ It is well-settled that in order to obtain a preliminary injunction, plaintiffs "must show 'a threat of irreparable injury and either (1) a probability of success on the merits or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party.'" *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d

Cir.2003) *quoting Time Warner Cable v. Bloomberg L.P.*, 118 F.3d 917, 923 (2d Cir.1997).

Here, plaintiffs' claims fail because they have not made the requisite showing of a probability of success on the merits or sufficiently serious questions going to the merits to warrant injunctive relief.[1]

### II. Probability of Success on the Merits of Plaintiffs' LMRDA Claims

Congress enacted the LMRDA in 1959 to regulate the relationship between union members and their union and its leaders. Congress sought to promote full and active participation of union members in their union "through processes of democratic self-government." *Wirtz v. Hotel, Motel and Club Employees Union*, 391 U.S. 492, 497, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968); *see also United Steelworkers of Am. v. Sadlowski*, 457 U.S. 102, 110–113, 102 S.Ct. 2339, 72 L.Ed.2d 707 (1982); *Am. Fed'n of Musicians v. Wittstein*, 379 U.S. 171, 182–83, 85 S.Ct. 300, 13 L.Ed.2d 214 (1964). Title I of the LMRDA affords basic protections to all union members, including equal voting rights, the right to free speech, and the right of free assembly. Although the LMRDA guarantees these rights to union members, it also balances them with the right of unions to adopt and enforce reasonable rules for its members. *See, e.g.*, 29 U.S.C. § 411(a)(2) ("nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.").

---

1. The Court need not address the first element regarding the threat of irreparable injury. Nonetheless, the Court notes that it is hard pressed to understand how plaintiffs could not be made whole for any injury at the conclusion of a trial through an injunction at that time.

## A. Plaintiffs' Membership Status in the RTWA

■ It is axiomatic that the LMRDA protects the rights of only union members or members in good standing. *See Phelan v. Local 305 of United Ass'n of Journeymen,* 973 F.2d 1050, 1055–57 (2d Cir.1992) ("Congress did not intend Title I of the LMRDA to create a panoply of rights to which all persons injured in some way relating to a union may turn when seeking redress."). This Court lacks subject matter jurisdiction over a claim brought pursuant to the LMRDA by any person not protected by the statute. *Id.* at 1056.

■ The LMRDA defines "member" or "member in good standing" as:

any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization.

29 U.S.C. § 402(*o*). The definition of 'member' under the LMRDA is not limited to those persons who are formally recognized by the union as members. *Phelan,* 973 F.2d at 1057; *Basilicato v. Int'l Alliance of Theatrical Stage Employees,* 479 F.Supp. 1232, 1242 (D.Conn.1979), *aff'd* 628 F.2d 1344 (2d Cir.1980). Instead, courts must look to whether plaintiffs have fulfilled the requirements of membership pursuant to a union's constitution and/or by-laws. *Id.*

■ Here, plaintiffs carefully have described their membership status both in the complaint and in their affidavits. Only plaintiffs Stojanov and Bold have alleged specifically that they are "members" or "members in good standing" of RTWA. However, plaintiffs Bockus and Lembaris have alleged that they were "illegally ousted from RTWA membership," but do not state that they are members or members in good standing of the union. Dkt. # 2, Bockus Aff., ¶ 3; Lembaris Aff., ¶ 3. The record in another case before the Court established that Bockus and Lembaris were expelled from RTWA for engaging in dual-union activity. *See Andraszek v. Rochester Tel. Workers,* 246 F.Supp.2d 174 (W.D.N.Y.2003). In *Andraszek,* this Court granted summary judgment to RTWA and dismissed the complaint brought by, *inter alia,* Bockus and Lembaris, holding that the LMRDA did not protect dual-union activities. *Id.*

■ Plaintiff Kevin Spelman has alleged that he is a member of the bargaining unit of internet help desk technicians represented by RTWA, but he has not alleged that he is a member or member in good standing of the union. He claims to have paid dues to RTWA for only a month. Dkt. # 2, Spelman Aff., ¶¶ 3 and 7. The Court construes these allegations in light of the current dispute between the internet help desk employees, the union and the employer, Frontier Telephone of Rochester. That dispute, referenced in plaintiffs' affidavits, is the subject of a third case pending before this Court. In *Dunbar v. Frontier Telephone of Rochester,* No. 02–CV–6481, the Regional Director of the NLRB filed a petition seeking an injunction pending the outcome of certain unfair labor practice charges being considered by the Board in connection with the alleged improper accretion into RTWA of the internet help desk employees. The record here and in *Dunbar* shows that a percentage of employees from the help desk are not members in good standing of RTWA. Dkt. # 8, Rodgers Aff., ¶ 28.

In light of these facts, the Court finds that only plaintiffs Stojanov and Bold meet the definition of members or members in

good standing of RTWA, and only their allegations that RTWA violated their equal right to vote and their right to free speech and assembly will be considered.[2] The Court lacks subject matter jurisdiction over plaintiffs Backus, Lembaris and Spelman's claims, and they are dismissed with prejudice. *Phelan,* 973 F.2d at 1057 (plaintiff's LMRDA claims should be dismissed for lack of subject matter jurisdiction on remand because he was not a member of the union); *Alliance of Am. Insurers v. Cuomo,* 854 F.2d 591, 605 (2d Cir.1988) ("subject matter jurisdiction cannot be waived and may be raised *sua sponte* by the district court"); *cf. Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000) (plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists).

### B. Equal Voting Rights

■ Section 101(a)(1) of the LMRDA provides:

(a)(1) Equal rights

Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

29 U.S.C. § 411(a)(1). Section 101(a)(1) prohibits "the *unequal* treatment of union members with respect to their voting rights" and "thereby curbs no abuse other than *discrimination* against some union members and in favor of others with re-

spect to voting rights . . . . To be viable, a claim under § 101(a)(1) must therefore allege the denial of some privilege or right to vote which the union has granted to others." *Members For a Better Union v. Bevona,* 152 F.3d 58, 63–65 (2d Cir.1998)(emphasis in original); *see also Sim v. N.Y. Mailers' Union Number 6,* 166 F.3d 465 (2d Cir.1999).

■ Here, plaintiffs assert that RTWA discriminated against them by failing to provide them with a copy of the affiliation agreement. Further, plaintiff Stojanov claims that the RTWA leadership failed to sufficiently inform the membership about the effects of affiliation, thereby denying the members a meaningful vote. Plaintiffs submitted no evidence whatsoever that other RTWA members had access to the agreement. Instead, they allege "upon information and belief" that RTWA gave the affiliation agreement to other members. Dkt. # 2, Stojanov Aff. ¶ 20; Bold Aff., ¶ 16. These allegations are insufficient to show a likelihood of success on the merits or substantially serious questions going to the merits to warrant granting injunctive relief. *Sim,* 166 F.3d at 471–72.

The law in the Second Circuit concerning claims under section 101(a)(1) is clear. Viable claims under this section are limited. *Sim,* 166 F.3d at 471. The Second Circuit has made it clear that Section 101(a)(1) prohibits only *discriminatory* treatment. *Sim,* 166 F.3d at 471–72; *Bevona,* 152 F.3d at 64–65. In other words, relief is appropriate only if certain union members are treated differently than others. Thus, in *Bevona,* the Court rejected plaintiffs' argument that the timing of the vote, coupled with the actions of the union leadership that allegedly 'tainted' the vote,

---

2. Even if the Court considered the allegations of plaintiff Spelman, its decision here would not change. Spelman makes allegations of discrimination that are identical to some of those made by plaintiff Stojanov.

violated the LMRDA. The Court in *Bevona* held that "these allegations are insufficient to establish even a colorable violation of § 101(a)(1)." *Bevona,* 152 F.3d at 63.

■ Similarly here, RTWA did not violate LMRDA § 101(a)(1) by holding the affiliation election on only ten days notice because all RTWA members were placed in the same position. *Bevona,* 152 at 65 (Section 101(a)(1) not violated where "the same detriments applied equally to all the members."). If members here believed that RTWA leaders did not provide them with sufficient information to cast an informed vote, they could have voted against affiliation. However, their equal voting rights under Section 101(a)(1) were not violated. *Amirault v. Shaughnessy,* 749 F.2d 140, 144–45 (2d Cir.1984) (reversing grant of TRO on the eve of a special affiliation referendum because plaintiffs' allegations that the union "had not adequately informed its members of the nature and consequences of . . . affiliation or of a competing [union] affiliation proposal" did not state a claim under LMRDA § 101(a)(1)).

Moreover, the Court is not persuaded by the statements of two non-party internet help desk technicians Erik Boyd and Brian Flynn, who, like plaintiff Spelman, assert that they are part of the RTWA bargaining unit but do not assert that they are RTWA members or members in good standing. Their statements allege that RTWA discriminated against members who opposed affiliation by providing only those in favor of affiliation with transportation to the polling stations and longer lunch breaks for voting. These allegations are vague and conclusory and contain no specific allegations based on knowledge. Furthermore, these statements are contradicted by the affidavits of RTWA President Marie Rodgers and Secretary /Treasurer Darlene Kelly. There is no evidence that either plaintiff Stojanov or Bold were denied van transportation or time off at lunch to vote. Both Rodgers and Kelly state that all RTWA members had access to van transportation and needed only to sign up in advance to take advantage of the benefit. Dkt. # 8, Rodgers Aff., ¶¶ 21–22; Dkt. # 14, Kelly Aff., ¶ 12.

■ Plaintiff Stojanov also alleges that the RTWA denied her access to RTWA's membership mailing list. Although there is some authority that denying the right of access to a membership mailing list violates the LMRDA, *see, e.g., Sheldon v. O'Callaghan,* 497 F.2d 1276 (2d Cir.1974), that allegation alone is not sufficient here to warrant injunctive relief. The record does not show that RTWA in fact denied Stojanov her request for the mailing list. Instead, RTWA Secretary Kelly indicated that she would need to check with RTWA's attorney first because the membership list contained confidential information. Stojanov alleges that she never obtained a copy of the membership list, but the record does not indicate why RTWA denied that request, nor does it contain evidence that those supporting affiliation were provided with that information. In addition, the Second Circuit in *Bevona* questioned the viability of *Sheldon. See Bevona,* 152 F.3d at 65 (holding that discriminatory conduct is at the root of Section 101(a)(1), and that "[t]o the extent that *Sheldon* suggests some other principle, it is hard to see what that principle is, or how it could be framed to avoid conflict with th[is] rule.").

Therefore, plaintiffs have not shown a likelihood of success on the merits on their claim that RTWA violated their equal voting rights.

## C. Freedom of Speech and Assembly

■ Section 101(a)(2) of the LMRDA provides:

(2) Freedom of speech and assembly

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2). There is, then, a tension in Section 101(a)(2) between the rights of union members and the right of the union to enforce reasonable rules regarding conduct that would interfere with its performance of union business.

■ Plaintiff Stojanov [3] asserts that she was denied her right to effectively communicate her opposing viewpoint on affiliation prior to the vote because it was decided so quickly. Stojanov also asserts that she was not permitted to ask questions about CWA affiliation at the November 20 informational meeting. She states in her affidavit that "although I wanted to debate why we were not considering an affiliation with the CWA, I did not attempt to ask any questions about having the CWA as an alternative consideration for merger or affiliation because Marie Rodgers, by her statements eliminated all discussion." Dkt. # 2, Stojanov Aff., ¶ 13. Plaintiff cites no cases to support her claim

that her LMRDA section 101(a)(2) rights were violated.

■ These allegations are insufficient to demonstrate that plaintiff would likely be successful on the merits of her free speech claim. The rights guaranteed by Section 101(a)(2) are not meant to be coextensive with the Constitutional right to free speech guaranteed by the First Amendment. *Sadlowski*, 457 U.S. at 111, 102 S.Ct. 2339 ("there is absolutely no indication that Congress intended the scope of § 101(a)(2) to be identical to the scope of the First Amendment."). This fact is evidenced by the proviso that the union has the right to establish "reasonable rules" governing the responsibilities of its members towards the union as an institution and to prohibit certain conduct that threatens the union. The Supreme Court has interpreted the proviso as "a general rule of reason" and held that Congress "indicated that the courts are to play a role in the determination of reasonableness." *Sadlowski*, 457 U.S. at 112 n. 4, 102 S.Ct. 2339.

Here, there is absolutely no evidence before the Court that RTWA prevented Stojanov or other members who opposed UNITE affiliation from exercising their rights to free speech or assembly on that issue. Given the fact that the November 20 informational meeting at UNITE's headquarters pertained to whether RTWA should affiliate with UNITE, not CWA or one of numerous other unions, it was not an unreasonable rule for RTWA President Rodgers to limit discussion at the meeting to the issue of whether affiliation with UNITE was appropriate. In fact, Section 101(a)(2) protects only the right "to express any views, arguments, or opinions

---

**3.** Plaintiff Bold does not assert any facts that would suggest he is claiming a violation of Section 101(a)(2).

... *upon any business properly before the meeting ....*" *See generally Schermerhorn v. Local 100, Trans. Workers Union of Am., AFL–CIO,* 91 F.3d 316, 324 (2d Cir.1996) ("unions may impose reasonable rules on a member's speech in the interest of preventing the disruption of union meetings.").

Accordingly, plaintiff Stojanov has not shown a likelihood of success on the merits or sufficiently serious questions going to the merits to warrant injunctive relief on her LMRDA § 101(a)(2) claim.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for preliminary injunction (Dkt.# 2) is denied. The Court, *sua sponte,* dismisses those claims brought by plaintiffs Barbara Bockus, Kevin Spelman, and Ann Lembaris for lack of subject matter jurisdiction and the complaint, as to them, is dismissed with prejudice.

IT IS SO ORDERED.